NELSON & ALBIN CREAMERY & CHEESE MANUFACTURING COMPANY v. M. K. ARMSTRONG and Others.[1]

December 16, 1904.

Nos. 14,085—(134).

**Bond of Indemnity.**

The treasurer of a creamery association accepted a bond with sureties from a private banker for the faithful performance of his duties as the custodian of its funds. The bond was, by its terms, to continue for one

[1] Reported in 101 N. W. 968; 102 N. W. 207, 731.

93 M.—29

year. Within the year a further agreement was indorsed thereon in these words: "We hereby agree that the within bond shall stand good until a successor to M. K. Armstrong is elected and qualified." which was assented to and signed by the principal and sureties. Deposits were made by the treasurer of the creamery association from time to time for over nine years before the failure and bankruptcy of the bank. *Held:*

1. That the consideration for the bond was the safe custody of the funds of the creamery association.

2. That by the terms of the memorandum indorsed on the back of the instrument it was to continue indefinitely until by the act of the association another depositary was named and qualified.

3. That findings of the court to the effect that the moneys were deposited for the benefit of the association during a period of some nine years was reasonably supported by the evidence which sustains the conclusion of law that the principal and sureties were liable for the amount due on the failure and bankruptcy of the bank.

Action in the district court for Watonwan county to recover from defendants, M. K. Armstrong as principal and Martha Armstrong and others as sureties, $2,620.14 and interest upon an indemnity bond. Defendant Martha Armstrong alone appeared and answered. The case was tried before Lorin Cray, J., who found in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendant Martha Armstrong appealed. Modified on rehearing.

*W. S. Hammond,* for appellant.

*J. W. Seager* and *Hoidale & Somsen,* for respondent.

LOVELY, J.

This action is to recover upon default in a bond by a private banker and the four other defendants, who signed as sureties, conditioned to require the bank to keep safely and pay out funds intrusted to the custody of the principal. It was tried to the court, who made findings and sustained the liability of defendants. The appellant, Martha Armstrong, one of the sureties, moved for a vacation of the decision of the court and for a new trial, which was denied. From this order she appeals.

The findings of the trial court are to the effect: That in March, 1891, the plaintiff became incorporated as the Nelson & Albin Creamery & Cheese Manufacturing Company for the purpose of manufacturing but-

ter and cheese and selling the same, as well as machinery, coal, and wood; also to buy and lease a creamery and store in the town of Nelson. Certificates of stock were issued, and the business was thereafter conducted under the style of the Nelson & Albin Creamery Company. From March 20, 1894, until September 22, 1903, the defendant M. K. Armstrong was doing business in St. James as a private banker under the name of "The Old Bank." That to obtain credit as the depositary of the funds of plaintiff, on that day he entered into an arrangement with such association through its treasurer (Kolstad) for that purpose, and to secure the repayment of deposits intrusted to the bank executed and delivered a bond in which he was the principal, and his wife, Martha Armstrong, with the other defendants, were sureties. Thereafter, until September 22, 1903, except for an interval of four years, during which there was no showing, the plaintiff deposited moneys and funds with the principal and drew checks thereon. That on November 18, 1903, a petition in bankruptcy was filed against defendant Armstrong, and on the 24th of the same month he was adjudged a bankrupt by the federal court. At this time there was a shortage of funds belonging to the plaintiff to the extent of $2,620, which was demanded and refused. As a conclusion of law the court held that plaintiff was entitled to judgment for that sum. The findings of fact are challenged upon the ground that they are not sustained by the evidence, which is the real contention upon this appeal.

It appears from the record that before the deposits were made in the bank by the treasurer of the association the stockholders of the creamery association at a meeting advised the treasurer to deposit with the Old Bank, and that the treasurer requested the bond for the protection of the plaintiff. It ran directly to the Nelson & Albin Creamery Company, and contained express provisions in terms as follows:

> Whereas, the above bounden Old Bank of St. James was on the 19th day of March, 1894, duly selected to receive deposits and pay out for said Co. in and for the towns as aforesaid in said county for the term of one year * * *. Now, therefore, if the said Old Bank of St. James shall, will and does faithfully discharge all of his official duties as such receiver and payer in and for said county and state, than this obligation to be void; otherwise to remain in full force and effect.

This bond was requested by the treasurer of the creamery company, and turned over to the association, which has had it ever since.

There can be no doubt that the purpose of the bond, so far as it applied to the proprietor of the bank and sureties, was to secure the creamery company, even though there had been no official appointment of a depositary for its funds; hence the obligation could have had but one purpose, which was to protect the association, and such must be regarded as its effect.

There was some controversy over the regularity of the incorporation, but we do not think it of any significance whether this creamery company was a corporation legally created or an association for the purposes of the business it was conducting, or whether, as we have suggested, the proprietor had been officially designated by the directors as a depositary; and we are quite clear that there was, upon a sensible interpretation of the condition therein, a liability thus created faithfully to account for and pay over to the association all moneys which were intrusted to the bank or its owner for the benefit of plaintiff, and, after having received the funds of the corporation and the delivery to the treasurer of this bond for the plaintiff's protection, the bank could not be permitted to deny liability during the life and existence of such obligation.

But the principal objections to the findings of the court by the appellant rest upon an interpretation of a memorandum thereon. It appears from the evidence that within the year during which the bond was given, further negotiations for the protection of the funds to be intrusted with the bank were entered into between the parties. As a result thereof an agreement was made and indorsed on the back of the bond in the following terms:

> We hereby agree that the within bond shall stand good until a successor to M. K. Armstrong is elected and qualified.

This memorandum was signed by Armstrong and each of the sureties, and then delivered to defendant.

Deposits of the association continued to be made in the bank by the treasurer, Kolstad, until March, 1895, when a new treasurer of the creamery association was appointed. During his incumbency, which continued for four years, there is an absence of any evidence to show

whether the bank acted as the depositary of the association. Kolstad was again appointed in 1899, and from then until the bankruptcy proceedings continued to deposit the funds of the association with the bank, when the latter was short in its account to the extent of the amount which the court found to be due, and for which it ordered judgment.

We do not regard the absence of testimony to show that deposits were made during the whole time as of importance, or in conflict with the findings of the trial court. The hiatus in the evidence in this respect does not demonstrate that the bank was not the depositary during that time, since it does appear that the bank, during a large portion of the entire time when deposits were made in the bank, was acting as the custodian of plaintiff's funds, and hence it is fairly inferable, in the absence of any showing to the contrary, that it was; and whether the bank was the custodian of the funds during the whole time is not material, for it was such depositary at and several years previous to the time when the shortage occurred and if, by the terms of the bond and memorandum referred to, which were executed by the principal and sureties, they became liable for the funds intrusted to the bank at the time it failed, the ultimate conclusion of the court upon which the order for judgment was directed must be sustained; and this brings us to the only important contention, as we regard it, in this appeal, which is urged by counsel here with considerable force.

It is insisted that a reasonable interpretation of this memorandum or supplemental agreement on the back of the bond goes no further than to hold the principal and sureties liable for the safe custody of the funds after the year of the original bond no longer than a reasonable time to secure a new depositary. It is sufficient in answer to this claim to say that this is not a sensible interpretation of the language of the memorandum itself. There can be no doubt that, the bond being made for the benefit of the association, the officer who obtained it must be treated as having acted therefor, and the association entitled to all the rights and benefits accruing to it thereunder; and, while it is complained that the association itself had not at any time, by its board of directors, named the bank as its depositary, this memorandum agreement recognized at least the fact that it might do so, which concluded the principal and sureties. Hence, to give effect to the express pro-

vision that the within bond shall "stand good until a successor to M. K. Armstrong is elected and qualified," the inference intelligently follows that the bond is to remain and be in force until a future specified act, namely, the selection by the creamery company of another depositary, and his qualification. In other words, it was the agreement of the appellant herself that the liability was to continue until a new depositary was selected by the association, and we must hold, upon the most strict construction of her rights, that under the bond she was liable for the default of her principal.

The order appealed from is affirmed.

A petition for rehearing having been made, the following order was filed on December 27, 1904.

PER CURIAM.

It is ordered that the rehearing be directed upon the sole proposition whether the court should have limited the amount due on the bond to the sum stated in the penalty. The reargument is to be upon briefs directed to the question suggested above viz.: Was the trial court authorized to find that appellant and other sureties were liable to a greater amount than the penalty named in the bond, $2,500?

On March 10, 1905, the following opinion was filed:

PER CURIAM.

On petition for reargument our attention is called to the fact disclosed by a critical examination of the record that the specified penalty in the bond of the Old Bank was for $2,500, while the amount found to be due to the plaintiffs, and for which judgment was ordered, was $120 in excess of that sum. While the difference between the penalty and amount for which judgment was ordered was technically within the errors assigned, no discussion of this feature was made at the argument or considered in the opinion, and, it being our view that the appellant surety was only liable to the extent of the amount of the penalty in the bond and interest thereon:

It is ordered, that the trial court amend its conclusion of law by a reduction of the amount ordered therein to the extent of $120, and direct judgment for the plaintiff for the balance.

No statutory costs to be allowed on this appeal.